15:02:50

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )
               vs.                 )
                                   )    2:20-CR-418-SB
PATRICIA MOREIRA,                  )
                                   )
                                   )
          Defendant.               )
_____    )
                                   )
                                   )

REPORTER'S TRANSCRIPT OF HEARING

Los Angeles, California

Wednesday, September 18, 2024

_____

AMY DIAZ, RPR, CRR, FCRR
Federal Official Reporter
350 West 1st Street, #4455
Los Angeles, CA 90012

*Please order court transcripts here:  www.amydiazfedreporter.com*

1    APPEARANCES OF COUNSEL:

2

     For the Plaintiff:

3

4                    Office of the United States Attorney
                     By:  Niall O'Donnell
5                         Assistant United States Attorney
                          Eric Schmale
6                         Assistant United States Attorney
                     United States Courthouse
7                    312 North Spring Street
                     Los Angeles, California 90012
8

9

     For the Defendant:

10

                     THE KUYUMJIAN LAW FIRM
11                        By:  Hagop Kuyumjian, Attorney at Law
                     515 South Flower Street, Suite 1900
12                   Los Angeles, California 90071

13                   THE LAW OFFICES OF MICHAEL A. GOLDSTEIN
                          By:  Michael Goldstein, Attorney at Law
14                   1645 Vine Street, Suite 809
                     Los Angeles, California 90028
15

16

17

18

19

20

21

22

23

24

25

15:02:52          THE CLERK:  Calling item number two,

15:03:01  CR-20-418-A-MWF, United States of America vs. Patricia Inelia

15:03:06  Moreira.

15:03:06          Counsel state your appearances for the record.

15:03:08          MR. SCHMALE:  Good afternoon, Your Honor.  Eric

15:03:10  Schmale on behalf of the Government.

15:03:11          THE COURT:  Good afternoon, Mr. Schmale.

15:03:14          MR. KUYUMJIAN:  Good afternoon, Your Honor.  Hagop

15:03:16  Kuyumjian for Ms. Moreira.

15:03:19          MR. GOLDSTEIN:  Good afternoon, Your Honor.  Michael

15:03:21  Goldstein, G-o-l-d-s-t-e-i-n, also for Ms. Moreira.

15:03:28          THE COURT:  Ms. Moreira, good afternoon.  Good

15:03:30  afternoon, counsel.

15:03:32          We are here for sentencing.  I have reviewed the

15:03:36  revised presentence report and the revised recommendation

15:03:40  letter from the probation office, the addendum to the

15:03:44  presentence report, the Government's sentencing memorandum,

15:03:48  and then the defendant's sentencing memorandum with the three

15:03:53  exhibits attached, the proof of the substantial payment of

15:03:58  $100,000 toward the even more substantial restitution, Ms.

15:04:05  Moreira's academic credentials, and then the letters in

15:04:09  support.

15:04:10          Does the Government believe that there is -- and

15:04:14  then the plea agreement.

15:04:15          The Government's motion is granted pursuant to

1  15:04:21   Section 5K1.1.  Certainly, a very substantial departure; in

2  15:04:28   fact, I think the largest departure that I've granted, but I

3  15:04:32   understand from the testimony in regard to Dr. Thropay, why

4  15:04:37   the Government is making that request.

5  15:04:38          Is there anything else that the Government believes

6  15:04:42   that I should have reviewed?

7  15:04:44          MR. SCHMALE:  No, Your Honor.

8  15:04:45          THE COURT:  All right.  And is there anything else

9  15:04:46   that the defense believes that I should have reviewed?

10 15:04:50          MR. KUYUMJIAN:  No, Your Honor, not at this time.

11 15:04:52          THE COURT:  And let me add the plea agreement, as

12 15:04:56   well.

13 15:04:56          Ms. Moreira, did you review the revised presentence

14 15:05:01   report with your lawyers?

15 15:05:03          THE DEFENDANT:  Yes, I did.

16 15:05:04          THE COURT:  All right.  Thank you.

17 15:05:06          The recommended base offense level here after the

18 15:05:12   revision is 6; the loss amount 16 levels; being a government

19 15:05:24   health care program, another upward adjustment of two levels;

20 15:05:27   the role of Ms. Moreira being three levels being an abuse of

21 15:05:34   public or private trust, another two levels; and then an

22 15:05:37   acceptance of responsibility for three levels.

23 15:05:42          With the departure that I previously mentioned, this

24 15:05:47   is an offense level of 19, and a Criminal History Category of

25 15:05:54   I, which results in 30 to 37 months as a recommended

15:06:01  Sentencing Guidelines amount, certainly a very substantial

15:06:05  reduction from what would otherwise have been a range of 63

15:06:10  to 78 months.  Of course, the defense is arguing for

15:06:18  something different.

15:06:20       So first, does the defense, recognizing that you are

15:06:25  going to argue for a very different sentence, is there any

15:06:28  objection to the calculations that are in the presentence

15:06:31  report?

15:06:32       MR. KUYUMJIAN:  Not at this time, Your Honor, other

15:06:34  than what we put in the sentencing memo, and obviously

15:06:38  pursuant to what we are going to argue.

15:06:39       THE COURT:  Correct.  And then the Government has

15:06:42  indicated that it agrees with these calculations, correct?

15:06:46       MR. SCHMALE:  That's correct, Your Honor.

15:06:48       THE COURT:  So the real sentence here, obviously, as

15:06:50  it has been with all of the defendants, is what should the

15:06:53  real sentence be?

15:06:56       There is a number of issues to consider.  On the one

15:07:03  hand, there is the seriousness of this conduct, and more

15:07:07  broadly, the seriousness of this particular fraud.  You know,

15:07:19  I think in Glendale there might be more hospices than in the

15:07:24  entire state of New York, so it's -- it's definitely

15:07:28  something which is recognized as being a real problem.

15:07:31       On the other hand, there are those issues, which the

15:07:36  defense argues should be seen reasons for leniency, the

affect on Ms. Moreira's family, the putative aberrant
conduct, and making the early restitution.

And then there is also an issue which matters, but
can only matter so much, and that is what other defendants
received.  All defendants are in, you know, have to be looked
at as their own persons.  Certainly, no one would want it to
be any other way.

And here, for instance, Dr. Thropay, despite going
to trial, and despite being a medical doctor, did receive
some leniency; those include for his age and the
extraordinary public good he did before being involved in
this fraud.

Those are matters that are unique to him.  Though,
of course, Ms. Moreira is not that much younger than Dr.
Thropay.

On the other hand, you know, a child on a
kindergarten playground has a gut sense that justice should
mean that like is treated alike; and I therefore don't intend
to ignore the other -- what has happened to the other
defendants, including Dr. Thropay.  And then of course, in
particular, including Mr. Karkotsyan, who could be seen as
the defendant who is most analogous to Ms. Moreira.

But again, all those things, while favoring
leniency, the question is how much?  Because what we have
here is a very serious fraud in which really Ms. Moreira and

Mr. Karkotsyan were at the center of it more than Dr. Thropay.

And that, therefore, the issue becomes, after giving this extraordinary credit for this very substantial cooperation, what would a just sentence be?  That is what has to be determined here.

So with those remarks, let me hear from the defense, I'll hear from the Government, the defense will have the opportunity to respond, and then I'll hear from Ms. Moreira directly.

MR. KUYUMJIAN:  Thank you so much, Your Honor.

And, Your Honor, I'll start out by addressing the seriousness of the conduct.

There is no doubt in any of our minds that Ms. Moreira's conduct in this case is very serious.  She betrayed the trust of her patients.  She had a professional license, she was a nurse, and she used her license in a way that obviously is against the law, and is an abuse of the trust that she had established for being a nurse.

She tried to become a nurse at a young age, and she ultimately reached that goal when she was a resident of Chile.  And she went into that field because she wanted to use her services and her talents to help other people, and to help those who are in need, and provide health care services. And she recognizes that she totally went against all those

ideals, all the things that she was taught, and all the
things that she was -- was standing up for, for so much of
her life.

But that ultimately, although this was serious, we
shouldn't forget that she did have many, many years of
service, and good service to the community.  She -- that
started when she was a young woman in Chile.  That continued
once she moved to this country, and really had an outstanding
professional record until the fraud in this case started.

And to her credit, Your Honor, she never shied away
from it.  She understood that this was serious conduct, and
she started cooperating with the Government and really
accepting responsibility even before the indictment happened.
And she continued to cooperate and expressed a desire to
plead guilty after the indictment.

So she is really very remorseful, and totally
understands that what she did was wrong, that she went
against all of her professional teachings, all of what is
right in society; and on top of that, she went against --
really, she came to this country with her family in search of
opportunity, in search of a better life, and in search of
giving her children a positive experience, and she totally
went against the ideals of this country by doing what she
did.  So she totally understands that.

But that being said, Your Honor, and as the Court

mentioned, Ms. Moreira is an elderly woman.  She's 68 years

old as she's sitting there today, and she suffers from

various health problems.  She's got cysts in her lungs, she's

got anxiety, she's got depression, and even the PSR, the

latest PSR recommendation letter, recognizes that these

conditions would be exacerbated by imprisonment.

And that is why we are asking for probation.

Because when you look at all of the whole circle of events

surrounding Ms. Moreira, you look at the seriousness of the

crime, you look at what the other defendants got -- and

obviously, as the Court recognized, we can't only look at

what the other defendants got, but it is something that

should be considered.  And you look at her conduct, specific

conduct, you look at her cooperation, she's been cooperating

for several years since really before, like I said, before

the charges were filed.

She met with the Government over 10 times for

several hours.  She provided many, many documents to the

Government that I don't believe that they had previously.

She testified at trial for Mr. -- at Dr. Thropay's trial for

the Government.  And she, my understanding, was the only one

of the defendants that testified for the Government at trial.

And all of that is a significant illustration on Ms.

Moreira's part that she wants to rectify the wrongs that she

committed in this case.  She wants to show the Court, and she

wants to show the Government that she shouldn't be defined by

the mistakes and the total side path that she took in this

case.  And she should be looked at as an individual who is

trying to rehabilitate, who is trying to make things right,

and she's trying to rectify all the things that she did.

And another way that she's illustrated that, and as

the Court mentioned, is she's the only defendant that I'm

aware of that made any restitution payment in this case.  She

made a $100,000 restitution payment, which is significant;

obviously, is not the whole thing, because we know that the

restitution in this case is over $1 million, and it's a very

large number, but $100,000, in order for her to make that

restitution payment -- and I think the Court's aware of this

because of the motions that we had to file -- she had to

refinance her home.  And she took great financial burden on

herself and on her family in order to do that.

And the reason why she did that was because this was

a financial crime, the victim in the case was financially

harmed, and she understood that in order to show that she's

remorseful, and that she is apologetic, and she's really

embarrassed and ashamed by what she's done, she needs to take

a significant step to show that she really means business,

and she's just not giving lip service to this kind of

apologetic feelings that she has.  So she took the step of

paying $100,000.  And she recognizes that she's going to owe

a lot more.  And she wants the Court to know, and she wants
the Government to know, that she's going to do everything
that she can to make right on that, because she knows that
that is the crux of the damage that was done in this case.

The other damage that was done in this case, and she
recognizes, is that she had patients who were harmed because
these patients were getting kind of services that they didn't
need, and they were not able to get other services that they
may have needed.  And she recognizes that is a significant
issue, because she is a nurse, and she went into nursing for
patient care.  She went into nursing for patient care, and
she totally went against all those ideals and all the oaths,
and all the requirements that -- all the professional
requirements that she had to stand by, by doing that.

But that gets me to the deterrent aspect of this
case, Your Honor.  And I know the Government mentioned this
in their sentencing brief, they mentioned that the custodial
sentence is required partly because of deterrence.  And I
would submit that somebody in Ms. Moreira's position doesn't
need a substantial prison sentence for a deterrent measure,
because she's a woman who had a professional license.  That
is all but gone at this point.  She's now financially in a
very different position than she was previously.  And her
family is in a totally different position.  And she's also
suffered very public humiliation, embarrassment and shame.

And she's really in a totally different position than she was before.

And when you look at people that commit these kind of offenses, professionals or white collar offenses of this nature, that involve professional licenses, generally people that are doing this stuff are not doing it for any reason, other than they are trying to make money. And they are also, in a way, trying to increase their professional notoriety, and their professional respect, because they are trying to increase their kind of foothold in the community with the job that they are doing. And all of that was taken away.

So if anybody that is a nurse or a professional with a license that is thinking about committing this kind of health care fraud, and they see that the outcome of it was that the money was taken, and that the license was taken, that is, I would submit, enough for even someone to say, oh, I don't want to get into this anymore, because the risk is just too high, because somebody that goes to school and has to go into extensive education, and has to expend all these resources to get to a professional level, and then kind of go sideways like this, and then gets their license taken away, and then has a huge financial penalty, and then on top of that, has the public kind of notice that they committed these kind of offenses, I would submit that that is enough for deterrence, and that a custody sentence is not required.

1 15:19:44          The other thing that I wanted to mention was that,

2 15:19:50    as the Court had mentioned, that Mr. Karkotsyan is an

3 15:19:55    analogous defendant to Ms. Moreira, and I would agree with

4 15:19:59    that, Your Honor, in some ways.  And in other ways, I don't

5 15:20:02    know if I -- I don't think I agree with it.  And I agree with

6 15:20:05    it in the sense that Mr. Karkotsyan and Ms. Moreira were

7 15:20:09    partners in this enterprise.  They started this enterprise

8 15:20:12    together.  They were the owners of the company.  They were

9 15:20:15    the owners of Blue Sky, and they kind of were the captains of

10 15:20:19   the ship, so to speak.

11 15:20:20          But the difference is significant, in that although

12 15:20:26   Mr. Karkotsyan cooperated with the Government, I don't

13 15:20:30   believe it was as substantial as the cooperation that Ms.

14 15:20:34   Moreira provided.  I think Ms. Moreira over the three-year

15 15:20:36   period, we met with the Government several times.  I was

16 15:20:39   there at some of the meetings, Mr. Goldstein was there at the

17 15:20:42   other meetings, and Ms. Moreira was always there.  She was

18 15:20:46   willing to talk to them whenever they needed.  She provided

19 15:20:50   documents.  She answered all of the questions, and really

20 15:20:53   made herself available.  And she was -- she tried to make

21 15:20:57   herself as open of a book as possible.

22 15:21:00          And I recognize that the Government understands

23 15:21:03   that, and they say that in their papers, but I think that her

24 15:21:09   really significant cooperation puts her in a different

25 15:21:11   category than Mr. Karkotsyan.

1 15:21:14        The other thing that Mr. Karkotsyan did not do was

2 15:21:18    pay restitution like Ms. Moreira did.  She -- and I -- as I

3 15:21:23    mentioned before, she took a significant step, and these

4 15:21:28    times are very tough for her and her family.  It was not an

5 15:21:32    easy thing for her to do, but she did that because she wanted

6 15:21:36    the Court and the Government to know how serious she was, and

7 15:21:40    how remorseful she was.

8 15:21:41        Then I will just also compare her to Dr. Thropay.

9 15:21:47    And as the Court mentioned, Dr. Thropay is up there in age,

10 15:21:53    although he's older than Ms. Moreira, he's not so much

11 15:21:56    younger than she is, and she's also suffering from various

12 15:21:59    health conditions.  And the health conditions that she

13 15:22:02    suffers from I think kind of exacerbates the dangerousness of

14 15:22:11    a prison sentence for her.

15 15:22:13        She's 68 years old.  She's got cysts in her lungs,

16 15:22:17    she needs further testing on those; and then on top of that,

17 15:22:20    she's got mental health issues, the depression and the

18 15:22:22    anxiety.  And who knows what could happen if she goes into

19 15:22:27    prison and she suffers a significant health scare or an

20 15:22:32    age-related issue.  Obviously, the prisons have health care

21 15:22:36    facilities, and things like that, but who knows what could

22 15:22:39    happen.  It would be a dangerous circumstance that she would

23 15:22:42    be faced with.

24 15:22:43        And when you put all that together, you have Dr.

25 15:22:48    Thropay and Mr. Karkotsyan getting 37 months each, and the

15:22:53 recommended sentence of 30 months for Ms. Moreira, while it's

15:22:57 lower, I don't think it's low enough to take into account all

15:23:03 the things that I mentioned.

15:23:04          And that is why we believe that a probationary

15:23:07 sentence is what would be fair in this case.  The conviction,

15:23:12 the loss of the professional license, the restitution, and

15:23:16 any other conditions that the Court would impose, I think

15:23:19 would take care of the deterrent issue.  I think it would be

15:23:23 an equal sentence in terms of other defendants got probation,

15:23:29 and then it would be the differences with Ms. Moreira and

15:23:34 Mr. Karkotsyan and Dr. Thropay are significant enough that it

15:23:38 could be justified.  And I think that when you look at the

15:23:43 whole picture, I think that is what is fair in this case.

15:23:47          Alternatively, if the Court wants to go a different

15:23:51 route, I would submit that a year and a day with electronic

15:23:56 monitoring or home confinement, or whatever variance that the

15:24:02 Court wishes, I think that would also be fair.  Because that

15:24:06 would allow Ms. Moreira to obviously be punished, she would

15:24:10 get some kind of custodial punishment, but she would be in

15:24:14 the safety of her home.  If she has a health scare, she could

15:24:18 handle it.

15:24:18          And she's not the type of person that would disobey

15:24:22 the Court's order.  The Court could impose whatever

15:24:25 conditions it wants on her.  She's shown to the Court and to

15:24:30 the Government that she's more than capable of complying with

15:24:32  orders.

15:24:33       She hasn't had any issues that I'm aware of over the

15:24:36  period of time that she has been out.  She's complied with

15:24:39  all pretrial orders.  She's met with Probation as required.

15:24:43  She's submitted her passport and all the other documents that

15:24:46  she needed to do at the onset of the case.

15:24:48       And I think when you put all of this together, I

15:24:51  think one of those ways I think would be the fairest outcome

15:24:56  here, because it would be a fair sentence in relation to the

15:24:59  case, and other cases in this area, it would take into

15:25:03  account her personal needs, it would take into account the

15:25:05  needs of society, and it would take into account the

15:25:10  sentences that the other defendants got.

15:25:12       So with that, I would submit at this point, with

15:25:16  rebuttal based on what the Government says, Your Honor.

15:25:18       THE COURT:  Thank you, counsel.

15:25:19       Let me hear from the Government.

15:25:21       MR. SCHMALE:  Thank you, Your Honor.

15:25:22       I will be brief, in no small part because I think

15:25:28  Your Honor laid out the relevant considerations, and kind of

15:25:31  everything that has to be considered to balance and reach an

15:25:34  appropriate sentence.

15:25:35       I believe the Government did that in arriving at the

15:25:38  30-month sentencing recommendation, which as Your Honor noted

15:25:42  includes a generous credit for the cooperation the defendant

1 15:25:47   provided in testifying at trial, and substantially more

2 15:25:51   generous than was provided to her similarly-situated

3 15:25:55   codefendant.

4 15:25:55         THE COURT:  As we mentioned, also it started early,

5 15:25:58   there were the documents and there was meetings -- there were

6 15:26:02   meeting that many times and for that long a time, and having

7 15:26:04   been both a prosecutor and a defense attorney, as well now as

8 15:26:08   a judge, that itself is something that should be recognized,

9 15:26:12   as well as the testimony at trial.

10 15:26:14         MR. SCHMALE:  Absolutely, Your Honor.  Thank you.

11 15:26:16         So, yes, so the Government believes that that

12 15:26:21   30-month sentence accounts for that additional cooperation.

13 15:26:26         But kind of responding to some of the points made by

14 15:26:30   defense counsel, speaking to deterrence, this is a very

15 15:26:34   serious crime, and it's very pervasive.  It is very hard to

16 15:26:40   prosecute, because it is very resource intensive to prosecute

17 15:26:44   these cases.  And the deterrence the Government is largely

18 15:26:47   speaking to is general deterrence; not necessarily specific

19 15:26:51   deterrence for this specific defendant.

20 15:26:53         And defense counsel argues that, you know, losing

21 15:26:56   the license and having to give money back is sufficient.  I

22 15:27:00   just don't think that is true if 100 people are doing this

23 15:27:03   and one gets caught, and the punishment is you have to give

24 15:27:05   back your license and the money, I don't think the other 99

25 15:27:07   are out there thinking, well, gee, I better be extremely

1  15:27:11   careful, because look at those harsh consequences.  So I

2  15:27:14   think there needs to be more than that.

3  15:27:18       In terms of some arguments in defense counsel's

4  15:27:24   brief, they talk about family circumstances, aberrant

5  15:27:28   behavior and mental and emotional conditions as reasons for

6  15:27:31   departures.  I don't think any of those are merited on the

7  15:27:35   facts.  There is nothing highly specific about the family

8  15:27:38   circumstances and her husband's health problems.

9  15:27:41       I do not believe aberrant behavior applies, because

10 15:27:44   this took significant planning and was over a significant

11 15:27:48   period of time, and the mental and emotional conditions

12 15:27:51   referenced do not appear to be serious enough to qualify for

13 15:27:56   a significant change in the sentence.

14 15:28:00       So I think we are left with, as Your Honor has hit

15 15:28:03   on, a largely comparative exercise between the other

16 15:28:07   defendants in this case, with Karkotsyan being the most

17 15:28:11   comparable.  He provided less cooperation in terms of the

18 15:28:17   critical thing is not testifying at trial, and not being able

19 15:28:21   to provide the useful testimony that was provided.

20 15:28:28       So I think starting with his sentence as a kind of a

21 15:28:32   starting point, and looking downward from there is fair,

22 15:28:34   which is, again, I think the Government's 30-month sentence

23 15:28:39   does that.

24 15:28:40       And I would note that I believe Defendant Karkotsyan

25 15:28:43   did also make a restitution payment prior to sentencing.  So

1 15:28:47   I don't think that is a basis to distinguish some, I believe

2 15:28:51   his restitution payment, I don't have the exact figure in

3 15:28:55   front of me, but I believe it was also in the hundreds of

4 15:28:59   thousands of dollars.

5 15:29:00         THE COURT:  It was.  But also, it was not paid at

6 15:29:02   the time of sentencing.  So obviously, I took it as a sign of

7 15:29:07   good intentions, but it's not the same as actually having

8 15:29:11   delivered it to the Clerk's Office.  So it's -- that is

9 15:29:15   definitely a distinction between Ms. Moreira and

10 15:29:19   Mr. Karkotsyan.

11 15:29:20         MR. SCHMALE:  Okay.  I thought it had been paid at

12 15:29:22   the time of sentencing, but perhaps I was wrong on that

13 15:29:24   point.

14 15:29:25         And then in terms of continuing this comparative

15 15:29:31   exercise, Dr. Thropay received a 37-month sentence, as well.

16 15:29:37   That is, obviously, substantially below what the Government

17 15:29:40   asked for.  But I still think that is reconcilable with a

18 15:29:45   30-month sentence, in part because the 30-month sentence is

19 15:29:48   lower than 37 months.  And owning and operating the hospice,

20 15:29:53   not withstanding the fact that Dr. Thropay was the doctor and

21 15:29:57   the defendant here was a nurse, owning and operating the

22 15:30:01   hospice is a more serious role.  That is why it resulted in

23 15:30:03   the leader/organizer enhancement here.

24 15:30:07         And so I think those, a 37-month sentence for Dr.

25 15:30:13   Thropay, and a 30-month sentencing can be reconciled here,

15:30:17 even if the gap is perhaps not as large as if the Government

15:30:20 had received the sentences it had asked for.

15:30:24          So I think those are the key points I wanted to hit

15:30:29 on, Your Honor.  If there is anything else Your Honor has

15:30:33 questions about, I'm happy to respond.

15:30:35          THE COURT:  Thank you.

15:30:37          Counsel, would you like to say anything in response?

15:30:40          MR. KUYUMJIAN:  Yes, Your Honor.

15:30:43          Thank you, Your Honor.

15:30:47          And I recognize the Government's arguments, and

15:30:51 obviously we are very grateful to the Government for making

15:30:54 the reduction argument that they did.  That is not lost upon

15:30:57 us.  But we also believe that a greater reduction is

15:31:01 necessary.

15:31:03          And I'll just go to Mr. Karkotsyan for a second,

15:31:06 Your Honor.  He's significantly younger than Ms. Moreira.  I

15:31:11 don't believe that -- I think he might be even 20 years

15:31:14 younger than Ms. Moreira.  I don't remember the exact math at

15:31:19 this point, but he's 20 years younger, he's far more equipped

15:31:23 to handle a custodial sentence than somebody that is Ms.

15:31:28 Moreira's age, in my opinion.

15:31:30          In addition to that, I won't belabor this, but the

15:31:37 cooperation just I don't believe was at the same level.

15:31:40          The other thing that I'll say, although Ms. Moreira

15:31:44 was the owner of the -- or one of the owners of the company,

15:31:48    and we recognize that, and she understands that, when you

15:31:52    compare it to Dr. Thropay, and obviously he doesn't get the

15:31:57    organizer enhancement, but he's also a medical doctor.  And

15:32:01    this -- he was an integral part in the whole scheme, because

15:32:05    it wouldn't have worked without a medical doctor.

15:32:08        So as he needed to sign off on the bills or the

15:32:12    charts to get the patients into hospice and certify them for

15:32:16    hospice, so he was an integral element that made the whole

15:32:22    scheme go.

15:32:22        So I would say that that is -- he's also a

15:32:28    significant participant in it.  And in addition to being a

15:32:33    significant participant, unlike Ms. Moreira, and unlike

15:32:38    Mr. Karkotsyan, he didn't cooperate at all.  He really fought

15:32:42    this thing to the bitter end.  And even, from what I

15:32:49    understand, didn't display any kind of remorse even at his

15:32:52    sentencing hearing.

15:32:53        And I recognize that he was a medical doctor, and he

15:32:55    may have done a lot of positive things prior to this, but

15:33:00    that is a significant difference than Ms. Moreira, because

15:33:04    Ms. Moreira obviously did a lot of positive things before

15:33:06    this.

15:33:07        And she did take responsibility in this case, Your

15:33:09    Honor, and she continues to take responsibility.  And I don't

15:33:14    think it can be forgotten just the health risks that she

15:33:20    takes, or that she has at this point.

1 15:33:22    The other thing that I would say, Your Honor, and

2 15:33:25 I'll just respond to the Government's claim about general

3 15:33:27 deterrence, I don't agree that other individuals would be

4 15:33:35 deterred from doing this if they see a sentence that is

5 15:33:39 probation or a year and a day, because when people do this,

6 15:33:44 their main goal is financial.  They are trying to enrich

7 15:33:48 themselves.  They are trying to become financially benefited

8 15:33:53 from this enterprise.  And if they see that the defendants

9 15:33:57 are getting convicted and all the money is being taken away,

10 15:34:01 and they are going to have to hire counsel or deal with legal

11 15:34:04 repercussions for many years, and significant court

12 15:34:09 intervention, and court, like, eyes on them, that is -- that

13 15:34:15 is enough for a lot of people not to do this, because they do

14 15:34:19 it to remain under the radar, they do it to make money, and

15 15:34:22 they do it to enrich themselves.

16 15:34:26    And if all of that gets taken away, and not only

17 15:34:28 does it get taken away, but they are not able to live a free

18 15:34:35 life even if they are outside of the prison system, I think

19 15:34:39 that is enough for general deterrence.

20 15:34:41    And there is cases that we cited in our sentencing

21 15:34:45 brief that basically say in white collar offenses,

22 15:34:48 probationary sentences are significant for deterrence, as

23 15:34:51 well.  So I think the general deterrent factor of a

24 15:34:57 probationary sentence cannot be understated.

25 15:34:59    The other thing that I would say is that Ms. Moreira

is -- she hadn't done anything like this before.  She was

living a law abiding life for her entire life, and then this

was a blip on the radar for her.

And she does not intend to do anything like this

ever again.  She does not want to be in this position ever

again.  And she does not want to put her family through this

ever again.  And all she wants to do is move on, show the

Court and the Government that she's apologetic, and

understanding of the mistakes that she made, and try to pick

up the pieces of her life.

So with that, Your Honor, I would submit, unless the

Court has questions that it would want me to respond to.

THE COURT:  No, I do not.  Thank you, counsel.  I

think you have responded to what the Government had to say.

Ms. Moreira, what would you like to say to me?

THE DEFENDANT:  Your Honor, I know this is the first

and only opportunity that I have to address the Court.  I

would like to express my sincere remorse and apologies for my

conduct with Blue Sky Hospice.  I express my complete and

unconditional repentance for my acts which affect others.

I also want to thank the Government for their trust

and for the opportunity to cooperate and to provide

assistance.

I have disappointed my husband, my children, my

friends and my colleagues in the nursing community.  As a

young girl in Chile, I dream of becoming a nurse to help

others.  My parents work so hard to make sure I had access to

a good education.  I attended a reputable university and

medical school, and worked hard to obtain my degree in

nursing licensing.  I start my career as a nurse in Chile,

where I spent 10 years as a pediatric and public health

nurse.  I then work as a nurse for over a decade in the

United States before engaging in this conduct, and destroying

a stellar career and going against my duties of patient care.

All of that is now in jeopardy because of my own

conduct.  My dreams have essentially become a nightmare.  I

want you to know that I did my best to assist the Government

against other defendants.  To testify in a trial was

terrifying me, and I worry about the long-term impact this

may have on our family.

I did this to show my remorse, and to send a message

to the Government and this Honorable Court that I have taken

this seriously regardless of the potential dangers to my

family.

We also refinance my home to have a significant

payment toward the losses.

Regardless of what I have done here, I respect the

law and ideals of the United States.  As an immigrant, this

country has afforded opportunities to our family that we

could have never imagined possible.  I'm proud that my

1  15:38:56  younger brother has three childrens, currently serving as an

2  15:39:04  officer in the United States Navy.

3  15:39:05          Through my conduct, I abused the country that has

4  15:39:09  given me so much, and it has been my home for 33 years.  My

5  15:39:15  husband and I love this country.  And I -- it hurts me to

6  15:39:22  stand here before you.

7  15:39:24          I will forever regret my mistake committed for which

8  15:39:29  I assume my responsibilities and consequences with the

9  15:39:34  promise and my word never to commit an offense for the rest

10 15:39:39  of my life.

11 15:39:41          I stand here before you and ask for your mercy as

12 15:39:47  you impose sentence.  I'm so sorry for what I have done.  I

13 15:39:53  have to be strong for my husband and children.

14 15:39:58          I'm humbly and respectfully asking you to consider

15 15:40:05  allowing me to continue to take care of them at home.  They

16 15:40:08  are all I have left.

17 15:40:11          Your Honor, thank you for this opportunity to be

18 15:40:13  heard.

19 15:40:14          THE COURT:  Thank you, Ms. Moreira.

20 15:40:17          Counsel, is there any legal cause why sentence

21 15:40:21  should not now be imposed?

22 15:40:23          MR. KUYUMJIAN:  No, Your Honor.  Thank you.

23 15:40:25          MR. SCHMALE:  No, Your Honor.

24 15:40:25          MR. GOLDSTEIN:  No, Your Honor.

25 15:40:27          THE COURT:  The Court has considered the sentencing

1 15:40:28  factors at Title 18 United States Code Section 3553(a),

2 15:40:32  including an advisory range of 30 to 37 months based on an

3 15:40:37  offense level of 19 and a Criminal History Category of Roman

4 15:40:42  Numeral I following the grant of the Government's motion

5 15:40:46  pursuant to Section 5K1.1.

6 15:40:49      The Court now sentences as follows:

7 15:40:53      It is ordered that the defendant shall pay to the

8 15:40:56  United States a special assessment of $100, which is due

9 15:40:59  immediately.  Any unpaid balance shall be due during the

10 15:41:02  period of imprisonment at the rate of not less than $25 per

11 15:41:06  quarter and pursuant to the Inmate Financial Responsibility

12 15:41:09  Program of the Bureau of Prisons.

13 15:41:11      It is ordered that the defendant shall pay

14 15:41:13  restitution in the total amount of $1,665,700 pursuant to

15 15:41:20  Title 18 United States Code Section 3663(a).  The defendant

16 15:41:24  shall receive credit for a payment of restitution of

17 15:41:30  $100,000.

18 15:41:31      The amount of restitution ordered shall be paid as

19 15:41:35  follows:

20 15:41:35      To the Victim Centers for Medicare and Medicaid

21 15:41:39  Services, commonly known as CMS, in the amount of $1,665,700

22 15:41:51  with the credit provided.

23 15:41:53      The Court finds from a consideration of the record

24 15:41:56  that the defendant's economic circumstances allow for

25 15:42:00  restitution payments pursuant to the following schedule.  The

1  15:42:04   balance shall be due during the period of imprisonment at the

2  15:42:07   rate of not less than $25 per quarter and pursuant to the

3  15:42:11   Inmate Financial Responsibility Program.

4  15:42:13        If any amount of the restitution remains unpaid,

5  15:42:17   monthly payments of at least 10 percent of the gross monthly

6  15:42:21   income, but not less than $500, whichever is greater, shall

7  15:42:24   be made during the period of supervised release.  These

8  15:42:28   payments shall begin 30 days after the commencement of

9  15:42:31   supervision.

10  15:42:32        Pursuant to Title 18, United States Code, Section

11  15:42:36   3612(f)(3)(A), interest on the restitution ordered is waived,

12  15:42:42   because the defendant does not have the ability to pay

13  15:42:44   interest.

14  15:42:45        Payments may be subject to penalties for default and

15  15:42:48   delinquency pursuant to Title 18, United States Code, Section

16  15:42:51   3612(g).

17  15:42:52        The defendant shall be held jointly and severally

18  15:42:56   liable with coparticipants John Paul Thropay, Raul De Luna

19  15:43:02   Sison, and Arutyan Karkotsyan for the amount of restitution

20  15:43:05   ordered in this judgment.

21  15:43:06        The victim's recovery is limited to the amount of

22  15:43:09   its loss, and the defendant's liability for restitution

23  15:43:12   ceases if and when the victim receives full restitution.

24  15:43:16        Pursuant to Section 5E1.2(a) of the Sentencing

25  15:43:20   Guidelines, all fines are waived, as the Court finds that the

15:43:23  defendant has established that she is unable to pay, and is

15:43:25  not likely to become able to pay any fine in addition to

15:43:29  restitution.

15:43:30          The defendant shall comply with Second Amended

15:43:33  General Order Number 20-04.

15:43:36          Pursuant to the Sentencing Reform Act of 1984, it is

15:43:39  the judgment of the Court that the defendant, Patricia Inelia

15:43:43  Moreira, is hereby committed on Count 11 of the First

15:43:46  Superseding Indictment to the custody of the Bureau of

15:43:48  Prisons for a term of 18 months.

15:43:51          Upon release from imprisonment, the defendant shall

15:43:53  be placed on supervised release for a term of three years

15:43:57  under the following terms and conditions.  The Court will now

15:44:01  read seven conditions.

15:44:03          1.  The defendant shall comply with the rules and

15:44:06  regulations of the United States Probation and Pretrial

15:44:09  Services Office, and Second Amended General Order 20-04,

15:44:14  including the conditions of probation and supervised release

15:44:17  set forth in Section 3 of Second Amended General Order 20-04.

15:44:22          2.  During the period of community supervision, the

15:44:25  defendant shall pay the special assessment and restitution in

15:44:29  accordance with the orders of this judgment pertaining to

15:44:31  such payment.

15:44:32          3.  The defendant shall cooperate in the collection

15:44:35  of a DNA sample from the defendant.

4.   The defendant shall apply all monies received
from income tax refunds, lottery winnings, inheritance,
judgments, and any other financial gains to the court-ordered
financial obligation.

5.   The defendant shall provide the probation
officer with access to any and all business records, client
lists, and other records pertaining to the operation of any
business owned, in whole or in part, by the defendant as
directed by her probation officer.

6.   The defendant shall not engage as whole or
partial owner, employee or otherwise, in any business or
profession that bills Medicare or any other publically-funded
health care benefit program without the express written
approval of the probation officer prior to engaging in any
such employment, business or profession.  And;

7.   The defendant shall submit the defendant's
person, property, house, residence, vehicle, papers, or other
areas under the defendant's control to a search conducted by
a United States probation officer or law enforcement officer.

Failure to submit to a search may be grounds for
revocation.  The defendant shall warn any other occupants
that the premises may be subject to searches pursuant to this
condition.

Any search pursuant to this condition shall be
conducted at a reasonable time and in a reasonable manner,

115:45:57   upon reasonable suspicion that the defendant has violated a

215:46:00   condition of her supervision, and that the areas to be

315:46:04   searched contain evidence of this violation.

415:46:06        The defendant -- the Court, rather, recommends to

515:46:14   the Bureau of Prisons that it conduct a mental health

615:46:17   evaluation of the defendant and provide all necessary

715:46:20   treatment.

815:46:21        The Court authorizes the probation officer to

915:46:24   disclose the presentence report and any previous mental

1015:46:27   health evaluations or reports to the treatment provider.  The

1115:46:31   treatment provider may provide information, excluding the

1215:46:34   presentence report, to state or local social service

1315:46:39   agencies, such as the Department of Social Service of the

1415:46:41   State of California for the purpose of the defendant's

1515:46:43   rehabilitation.

1615:46:44        The drug testing condition mandated by statute is

1715:46:47   suspended based on the Court's determination that the

1815:46:50   defendant poses a low risk of future substance abuse.

1915:46:54        Ms. Moreira, the law requires me to mouth the

2015:46:59   following words, which is that you have a right to appeal

2115:47:03   this sentence.  You exercise that right by filing a Notice of

2215:47:07   Appeal here in the District Court.  That removes the case to

2315:47:09   the Court of Appeals.

2415:47:11        If your lawyers refused to assist you, then you

2515:47:14   could contact my courtroom deputy, Ms. Jessica Cortes, or

1 15:47:22    Rita Sanchez, and/or the Clerk's Office, you could send them

2 15:47:26    a note, and the Notice of Appeal would be prepared and filed

3 15:47:30    on your behalf.  The deadline for filing the Notice of Appeal

4 15:47:34    is 14 days from today's date.

5 15:47:37          Actually, you don't have that right, because this

6 15:47:40    sentence is lenient enough that it falls within the waiver of

7 15:47:44    your appellate rights that was previously made.

8 15:47:49          Why am I imposing this sentence?  I agree with both

9 15:47:56    sides to a point.  I do think that there is a basis for

10 15:48:02    additional leniency here beyond the seven levels for the

11 15:48:06    cooperation.

12 15:48:09          One reason counsel argued is that the severity of

13 15:48:15    the sentence arises in part from the Sentencing Guidelines,

14 15:48:21    but at some point the loss amount, that it's a government

15 15:48:25    program, the role of the defendant, the abuse of public

16 15:48:29    trust, all of these things go together.

17 15:48:31          There is a certain element of double counting here.

18 15:48:34    It was -- yes, there is an abuse for being a nurse, but then

19 15:48:38    that also allowed the role; and moreover, it was a government

20 15:48:42    health care program, but that is precisely why the amount is

21 15:48:46    as large as it is, and the amount as substantial as it is, is

22 15:48:51    still not near at the high end of this range under the

23 15:48:55    Sentencing Guidelines.  That is a basis for leniency.

24 15:49:00          The fact, not only of the defendant's extensive

25 15:49:04    cooperation, but how early it occurred, as indicative of

1  15:49:11   exceptional remorse, is also a factor.

2  15:49:14          Certainly as a matter of the Guidelines being, this

3  15:49:19   is not aberrant conduct; however, the thoughts behind that

4  15:49:24   certainly contribute to this.  It is clear that Ms. Moreira

5  15:49:28   started her nursing career, as I'm sure all nurses,

6  15:49:32   registered nurses do, in the expectation for helping those

7  15:49:36   who need it.

8  15:49:37          And of course, the effect on her family is, will be

9  15:49:43   severe, I recognize that.

10 15:49:45          The fact of her age, and her own health condition

11 15:49:49   is, again, a factor that should be considered, just as it was

12 15:49:54   in the sentencing of Dr. Thropay.

13 15:49:57          However, that -- some of these things are just the

14 15:50:02   inevitable and foreseeable consequences of the crime itself.

15 15:50:07   And at some point, the crime itself is so serious, especially

16 15:50:14   even though they aren't listed as the financial victims, the

17 15:50:18   effect that this had on the individual patients is simply

18 15:50:21   something that cannot be ignored.

19 15:50:23          I -- oh, let me say another thing of leniency, of

20 15:50:28   course, is the prepayment of the $100,000.  Probation thought

21 15:50:32   $10,000 would be appropriate.  The defendant has come up with

22 15:50:34   considerably more than that.  I'm sure she's correct that

23 15:50:38   doing so is a hardship to her family.

24 15:50:41          However, as I was saying, this is just such a

25 15:50:45   serious crime that while there is no need for specific

15:50:49   deterrence, I'm sure Ms. Moreira will never do anything to

15:50:54   break the law again, there has to be some recognition of just

15:51:00   the severity of this crime, a probationary sentence is simply

15:51:06   not enough for that.

15:51:08          The fact that other defendants received probation,

15:51:11   completely different circumstances.  The Government itself on

15:51:15   at least one instance recommended that, as well.  So here, it

15:51:22   can't determine the sentence for the reasons that we've all

15:51:24   said, but kind of a crosscheck on the appropriateness of this

15:51:30   sentence is the sentences that were given to others, that

15:51:36   here you have the partner in the enterprise.  There are

15:51:41   reasons that Ms. Moreira deserves a lenient sentence compared

15:51:46   to Mr. Karkotsyan, but that can only go so far.

15:51:52          There are many reasons she deserves a more lenient

15:51:55   sentence than Dr. Thropay, but part of that is reflected in

15:51:59   both the downward adjustment for her acceptance of

15:52:02   responsibility, and as well, the very generous leniency that

15:52:10   was reflected in the Government's motion.

15:52:13          So as I said, I have considered the sentences that

15:52:17   were given to others, but those alone would not justify a

15:52:23   sentence of probation.

15:52:25          Counsel, what is the recommendation on an

15:52:32   appropriate time to surrender?

15:52:36          MR. KUYUMJIAN:  Your Honor, we were going to ask for

15:52:38   four months, if that was -- if that is okay with the Court.

1 15:52:41      THE COURT:  It's -- I'll grant that.  It's slightly

2 15:52:45  more than what I usually give, which is 10 weeks, but I know

3 15:52:51  that Ms. Moreira and her family are going to have a lot of

4 15:52:54  planning to do.  So I will go ahead and do that.

5 15:52:57      So from here, we've got -- so I will -- I will

6 15:53:07  direct the defendant to surrender to the designated

7 15:53:11  institution on or before Friday, January 10th at 12:00 noon.

8 15:53:17  If no institution has been designated, then to the Office of

9 15:53:20  the United States Marshal on the third floor of this

10 15:53:24  courthouse.

11 15:53:25      MR. KUYUMJIAN:  And, Your Honor, just to be clear,

12 15:53:29  the Court is, I understand, not considering electronic

13 15:53:32  monitoring?

14 15:53:33      THE COURT:  I am not.

15 15:53:34      MR. KUYUMJIAN:  Okay.  But would the Court consider

16 15:53:36  recommending Ms. Moreira for a minimum security satellite

17 15:53:40  camp in California?

18 15:53:40      THE COURT:  I will do so.  Generally, the --

19 15:53:48  generally, the Bureau of Prisons determines the appropriate

20 15:53:54  level; however, I can certainly designate -- I can certainly

21 15:53:59  recommend a geographic designation; and also, I can recommend

22 15:54:02  a specific facility.  But here, I will do as you suggest, and

23 15:54:10  recommend a facility in California which is a minimum

24 15:54:15  security facility.

25 15:54:16      As to that, the Bureau of Prisons will have to

determine that that is an appropriate level for Ms. Moreira.

So they -- they may or may not accept that recommendation.

It would be exceedingly unlikely that they would not accept

the recommendation for a designation in California.

            Anything else on behalf of Ms. Moreira?

            MR. KUYUMJIAN:  No, Your Honor.

            MR. GOLDSTEIN:  No, Your Honor.  Thank you.

            MR. SCHMALE:  With regards to restitution, I heard

Your Honor say that it would be joint and several with

regards to the two other defendants in this case.

            THE COURT:  I believe I said it was as to three, the

three identified coparticipants, which -- oh, the two in this

sense, but Dr. Thropay, as well, Mr. Sison and

Mr. Karkotsyan.

            MR. SCHMALE:  I believe you identify those three,

but there are two other related cases, United States v.

Giologo and United States v. Augustine.

            THE COURT:  Correct.  That is exactly right.  And

this arose before.  I will add, then, that the joint and

several comes -- shall be added to all of the coparticipants,

and that includes Soro, Augustine, and Randy Giologo.

            MR. SCHMALE:  Giologo and Augustine, those are

different case numbers.

            THE COURT:  Correct.  Right.  I have in my notes

here what their sentences were.  I was considering them for

115:55:49   the fact that they were the probationary sentences.  I'm

215:55:51   aware of those defendants, obviously, and I considered the

315:55:53   fact of their sentences in deciding what this sentence should

415:55:57   be.

515:55:57        MR. SCHMALE:  Also, Your Honor, just in the

615:55:59   interests of full disclosure, in the Government's sentencing

715:56:02   memo, we had mentioned potential restitution in the amount of

815:56:07   $1,529,003, because that is what Judge Blumenfeld ordered for

915:56:16   Dr. Thropay.  The 1,665,700 that Your Honor ordered, that

1015:56:23   represents the full amount billed as part of the scheme.

1115:56:26   Judge Blumenfeld saw fit to back some numbers out there.

1215:56:31        THE COURT:  Then let me -- I want -- you know,

1315:56:34   technically, the Judgment & Commitment Order reflects what

1415:56:37   was done now, so I want what is done now to be correct.

1515:56:42        So give me the number from Judge Blumenfeld.

1615:56:48        MR. SCHMALE:  $1,529,003.

1715:56:51        THE COURT:  $29,003.  Yes.

1815:56:55        Where the Court stated the amount of $1,665,700, the

1915:57:01   Judgment & Commitment Order will reflect the amount of

2015:57:04   $1,529,003, and then of course the $100,000 will be applied

2115:57:13   as a credit to that.

2215:57:15        MR. SCHMALE:  Yes.  Thank you, Your Honor.

2315:57:16        THE COURT:  Okay.  Anything else from the

2415:57:19   Government?

2515:57:20        MR. SCHMALE:  No, Your Honor.  Only to dismiss the

1  15:57:22   remaining counts of the Indictment.

2  15:57:23         THE COURT:  The remaining counts of the Indictment

3  15:57:25   are dismissed in the interests of justice.

4  15:57:29         Anything else on behalf of Ms. Moreira?

5  15:57:33         MR. GOLDSTEIN:  No, Your Honor.  Thank you.

6  15:57:35         THE COURT:  Ms. Moreira, good luck to you and your

7  15:57:37   family.

8                           *****    *****    *****

9

10   I certify that the foregoing is a correct transcript from the

11   record of proceedings in the above-titled matter.

12

13

14

15   ---------------------------

16

17   Amy C. Diaz, RPR, CRR            November 21, 2024

18   S/  Amy Diaz

19

20

21

22

23

24

25